UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSHUA PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 19-0928 (CJN) |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CUSTOMS AND BORDER PROTECTION'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant Customs and Border Protection ("CBP") respectfully moves for summary judgment in the above-captioned Freedom of Information Act ("FOIA") action. In support of this Motion, Defendant refers the Court to the supporting Memorandum of Points and Authorities, Statement of Material Undisputed Facts, and Declaration of Patrick Howard with exhibits.

Dated: March 2, 2022

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: _____/s/ Sean Tepe_____
SEAN M. TEPE, DC BAR No. 1001323
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2533
sean.tepe@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSHUA PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 19-0928 (CJN) |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT
## CUSTOMS AND BORDER PROTECTION'S MOTION FOR SUMMARY JUDGMENT

Defendant Customs and Border Protection ("CBP") respectfully moves for summary judgment in the above-captioned Freedom of Information Act ("FOIA") action.[1]  The only issue for the Court's consideration is whether CBP properly withheld in full pursuant to 5 U.S.C. § 552(b)(6) and 7(C) two videos of non-citizen detainees (one a minor) interviewed by trained investigators looking into allegations of sexual abuse while in CBP custody.  The following memorandum and accompanying supporting declaration and exhibits demonstrate that there is no public interest outweighing the substantial privacy interests of the interview participants which would compel disclosure of these sensitive videos.  Accordingly, CBP respectfully requests that the Court grant its motion for summary judgment.

---

[1]    Plaintiff is satisfied with the final responses of all other Defendants and plans to dismiss those Defendants subject to the resolution of any request for fees.  *See, e.g.*, Joint Status Report (ECF No. 24).

## FACTUAL BACKGROUND

### A.    FOIA Requests and Responses

On July 12, 2018, Plaintiff submitted two FOIA requests with subparts to CBP, which were acknowledged by CBP on August 16, 2018.  Declaration of Patrick Howard ("Howard Decl.") ¶ 6. One request with 30 subparts was assigned tracking number CBP-2018-076171.  *Id.*, Ex. 1.  The other request, with 33 subparts, was assigned tracking number CBP-2018-076172.  *Id.*, Ex. 2.  In part, both requests sought documents regarding the treatment of unaccompanied non-citizen children in CBP custody.  *Id.*

In response to the requests, CBP released a total of 654 pages of documents with redactions made pursuant to 5 U.S.C. § 552(b)(2), (3), (6), (7)(C), and (7)(E).  *Id.* ¶¶ 9-10.  CBP also released three videos (without audio) totaling approximately twenty minutes in length.  *Id.* ¶ 11.  CBP withheld in full 142 pages of records pursuant to 5 U.S.C. 552(b)(3), (6), (7)(C), and (7)(E).  *Id.* ¶ 10.

Plaintiff is not challenging the adequacy of CBP's search and did not request a *Vaughn* index for the withholdings.  *Id.* ¶ 12.  A *Vaughn* index was not necessary because the parties agreed that the only outstanding issue with regard to CBP's response concerns two videos containing interviews with individuals about sexual assault allegations that CBP has withheld in full pursuant to FOIA Exemptions 6 and 7(C).  *Id.* 13.

### B.    Withheld Records

CBP withheld in full two videos that record interviews of non-citizen detainees who were in CBP custody.

#### 1.    May 16, 2018 Video

On May 16, 2018, two CBP Office of Professional Responsibility ("OPR") Special Agents interviewed a detainee who alleged that he was sexually abused and drugged in CBP custody.  *Id.*

¶ 17-18, Ex. 4.  Although the interview video has been withheld, a redacted copy of the Report of Investigation was released in response to the FOIA request.  *Id.*, Ex. 4.  The Report contains an "interview summary" of the contents of the video.  *Id.*, Ex. 4 (page 79 of decl.).  The detainee repeatedly "declined to make a statement" substantiating the allegation and expressed that "he wished to end the interview."  *Id.*  The Report also indicates that one of the Special Agents reviewed separate video footage of the detainee's "entire time in his holding cell" and that "footage revealed no evidence of [the detainee's] sexual assault allegation."  *Id.*

CBP withheld this video interview in full pursuant to 5 U.S.C. § 552(b)(6) and (7)(C).  *Id.* ¶ 21.  CBP withheld this video to protect the privacy interests of the detainee, as well as the OPR Special Agents.  *Id.* ¶¶ 28-30.  None of the detainees recorded in the video waived their privacy interests in this recorded interview discussing a sensitive, personal subject during an investigation that could potentially result in a referral for criminal prosecution.  *Id.* ¶ 29.  CBP also concluded that there was no public interest in disclosure that outweighed the substantial privacy interests of these individuals, particularly because CBP released a redacted Report of Investigation, which included a summary of the video recorded interview.  *Id.* ¶ 32.  CBP reasonably foresees harm to the privacy interests of these individuals because release of the videos would disclose the identities of these individuals, which is the privacy interest sought to be protected by Exemptions 6 and 7(C).  *Id.* ¶ 33.  Further, CBP determined that any non-exempt material in the video recorded interview was inextricably intertwined with exempt material.  *Id.* ¶¶ 34-35.  The video records the image and the voice of individuals, which are both inherently identifying features.  *Id.* ¶ 35.  Nothing of substance would remain in the videos if the audio was removed and images redacted.  *Id.*

2.    February 6, 2019 Video

On February 6, 2019, a minor detainee was interviewed by a Certified Forensic Interviewer regarding the detainee's allegation, made during an initial intake assessment at a Department of

Health and Human Services Office of Refugee Resettlement facility, that another minor detainee had on multiple occasions touched his testicles and buttocks. *Id*. ¶¶ 22-23, Ex. 5. Although the video of the interview has been withheld, a redacted copy of the Report of Investigation was released in response to the FOIA request. *Id*., Ex. 5. The Report summarizes that during the interview the minor detainee clarified that the other minor detainee had "touched him on the butt" only while they watched a movie and that this occurred one time only. *Id*., Ex. 5 (page 90 of decl.). No referral for prosecution was made. *Id*.

CBP withheld this video interview in full pursuant to 5 U.S.C. § 552(b)(6) and (7)(C). *Id*. ¶ 26. CBP withheld this video to protect the privacy interests of the detainee, a minor, as well as the Certified Forensic Interviewer and an attorney from the National Immigrant Justice Center who was present. *Id*. ¶¶ 28-31. None of the individuals recorded in the video waived their privacy interests in this recorded interview discussing the sensitive subject of alleged sexual assault of a minor during an investigation that could potentially result in a referral for criminal prosecution. *Id*. ¶ 29. CBP concluded that there was no public interest in disclosure that outweighed the substantial privacy interests of these individuals, particularly because CBP released a redacted Report of Investigation, which included a summary of the video recorded interview. *Id*. ¶ 32. CBP reasonably foresees harm to the privacy interests of these individuals because release of the videos would disclose the identities of these individuals, which is the privacy interest sought to be protected by Exemptions 6 and 7(C). *Id*. ¶ 33. Again, CBP determined that any non-exempt material in the video recorded interview was inextricably intertwined with exempt material. *Id*. ¶¶ 34-35.

## LEGAL STANDARDS

Under FOIA, federal courts have jurisdiction to compel the production of agency records only where those records have been "improperly withheld." 5 U.S.C. § 552(a)(4)(B); *GTE*

*Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384 (1980).  "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  When the withholding of material responsive to a FOIA request is at issue, the government agency has the burden of showing that the material withheld falls within a FOIA statutory exemption to disclosure. *Leadership Conference on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).  A court may grant summary judgment based solely on information in an agency's declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  After asserting exemptions, an agency must release "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

## ARGUMENT

**I.      The Videos Are Exempt From Disclosure Pursuant to FOIA Exemption 6**

The Videos are exempt from disclosure pursuant to FOIA Exemption 6, which  permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

First, the term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").  A video or audio recording of an individual may be a "similar file."  As

the D.C. Circuit concluded previously, "[t]he information recorded through the capture of a person's voice is distinct" and the voices constitute "information which applies to . . . particular individual[s]." *New York Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990). Thus, the Videos are "similar files" because they record the voices, as well as the images, of specific individuals conducting and responding to an interview.

Once past this threshold, in assessing the applicability of Exemption 6 courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46. The balancing analysis requires that a court first determine whether disclosure of the files "would compromise a substantial, as opposed to *de minimis*, privacy interest," because "[i]f no significant privacy interest is implicated . . . FOIA demands disclosure." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). The "use of the word substantial in this context means less than it might seem[,]" because "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). If such a privacy interest exists, then the analysis moves on to address whether there is a public interest that outweighs the individual privacy concerns. *Id*. at 1230.

Courts regularly conclude that government personnel, particularly those involved in law enforcement, possess a substantial privacy interest. *See, e.g., Coleman v. Lappin*, 680 F. Supp. 2d 192, 197 (D.D.C. 2010) (concluding Bureau of Prison staff had privacy interests in the protection of their names and other personally identifying information); *Bangoura v. Dep't of the Army*, 607 F. Supp. 2d 134, 149 (D.D.C. 2009) (concluding that the Army "properly withheld [under Exemption 6] the names and/or identities of the redacted law enforcement personnel or third parties

interviewed during the investigation" by military police). The Special Agents and Certified Forensic Interviewer possess a substantial privacy interest in the protection of their identities.

Further, third parties (the detainees interviewed and the individuals who were the subject of the detainees' allegations) enjoy substantial privacy interests. Relevant here, "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). This interest extends to complainants, victims, and witnesses. *See Horowitz v. Peace Corps*, 428 F.3d 271, 279-80 (D.C. Cir. 2005) (holding that complainant of sexual misconduct claim had a privacy interest in his name); *Kearns v. FAA*, 312 F. Supp. 3d 97, 111 (D.D.C. 2018) (finding substantial privacy interest in "information [that] would associate third parties with internal agency investigations and threatens to identify them as witnesses to or victims of alleged workplace misconduct").

Disclosure of the videos would necessarily disclose the identities of the Special Agents, the Certified Forensic Interviewer and the detainees. Both the video images and the audio are inherently identifying. And these individuals, particularly the detainees, have a privacy interest in their voices. As the court ruled in *New York Times Company v. NASA*, 782 F. Supp. 628, 631 (D.D.C. 1991), "the 'intimate detail' that underlies the privacy interest in this tape is the sound of the astronauts' voices." *See also Pike v. Dep't of Justice*, 306 F. Supp. 3d 400, 412 (D.D.C. 2016), *aff'd*, No. 16-5303, 2017 WL 2859559 (D.C. Cir. June 23, 2017) (observing "audio format of a recorded conversation inherently conveys new information not otherwise found in the transcript of a recording alone" including "the identity of the individual source" and consequently holding "entire audio recording" of conversation is exempt under Exemption 7).

"[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its

statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth*., 510 U.S. 487, 497 (1994)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Here, there is no public interest in disclosing the Videos.  To the extent Plaintiff is interested in the "agency's performance" of its duties, Plaintiff has already received that information through the production of the redacted Reports of Investigation.  Howard Decl. __.  The Reports contain summaries of the interviews conveying the primary substance of the information conveyed to the investigators.  Id.  In fact, "the information that would be learned through the production of these videos is primarily the identity of the individuals who were interviewed."  Id.  Disclosure of the Videos would not contribute to the understanding of the government's activities and operations.  *New York Times*, 782 F. Supp. at 633 (the actual tape recording of astronauts would not "significantly contribute" to the public understanding of the Challenger disaster, especially where a written transcript existed).

In sum, CBP appropriately invoked Exemption 6 to withhold the Videos.  As demonstrated by the Howard Declaration and consistent with the law in this Circuit, the Videos are "similar files" the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

## II.    The Videos Are Exempt From Disclosure Pursuant to FOIA Exemption 7(C)

Exemption 7(C) permits the withholding of "records of information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  First, in assessing whether records are compiled for a law enforcement purpose, the "focus is on how and under what circumstances the requested

files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotation marks omitted). "To qualify as law-enforcement records, the documents must arise out of 'investigations which focus directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions.'" *Bartko v. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)).

Here, the May 16, 2018 Video arises directly from an investigation by an OPR Special Agent of a detainee's allegation that he had been "sexually abused and drugged" while in CBP custody. Howard Decl. ¶¶ 17-18, Ex.4. The investigation was conducted by a trained criminal investigator. *Id*. ¶¶ 16, 18. Depending on the evidence uncovered, the investigation could lead to a referral for criminal prosecution. *Id*. The detainee interview conducted by the Special Agent was part of an investigation conducted pursuant to CBP's obligations under the Prison Rape Elimination Act and the Department of Homeland Security's implementing regulations at 6 C.F.R. Part 115, Subpart B. *Id*. ¶ 15. Thus, the May 16, 2018 Video constitutes a record compiled for law enforcement purposes. *See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 947 (D.C. Cir. 1998) (holding DOJ OPR investigation "conducted in response to and focused upon a specific, potentially illegal release of information by" government official was compiled for law enforcement purpose); *Nat'l Whistleblower Ctr. v. HHS*, 849 F. Supp. 2d 13, 27-28 (D.D.C. 2012) (explaining that because records at issue "were compiled to investigate allegations that specific individuals at FDA had engaged in specific acts that could constitute violations of criminal and civil laws," the records were compiled for law enforcement purposes).

Likewise, the February 6, 2019 Video arises directly from a separate investigation by an OPR Special Agent of a minor detainee's allegation that he had been sexually assaulted in CBP custody by another minor detainee. Howard Decl. ¶¶ 22-23, Ex. 5. The investigation was conducted by a trained forensic interviewer. *Id* ¶ 24. The detainee interview was conducted as part of an investigation conducted pursuant to CBP's obligations under the Prison Rape Elimination Act and the Department of Homeland Security's implementing regulations at 6 C.F.R. Part 115, Subpart B, and depending on the evidence uncovered, the investigation could lead to a referral for criminal prosecution. *Id*. ¶ 15. Thus, the February 6, 2019 Video also constitutes a record compiled for law enforcement purposes.

Second, to justify withholding under Exemption 7(C), the agency must show that (1) the disclosure of the records must "reasonably be expected to constitute an unwarranted invasion of personal privacy," and (2) the "personal privacy interest" must not be "outweighed by the public interest in disclosure" of the records. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 160, 165-66 (2004) ("*NARA*"). The Court applies a balancing test just as it does under Exemption 6, although "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because 'Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects.'" *Braga v. FBI*, 910 F. Supp. 2d 258, 267 (D.D.C. 2012) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989)). First, Exemption 6 "encompasses 'clearly unwarranted' invasions of privacy, while Exemption 7(C) omits the adverb 'clearly.'" *Id*. Second, Exemption 7(C) lowers the risk of harm standard from "would" to "could reasonably be expected to" constitute an invasion. *Id*. The differences in the language between the two exemptions reflect Congress's decision to provide the government with

"greater flexibility in responding to FOIA requests for law enforcement records or information." *See Reporters Comm.*, 489 U.S. at 777 n.22.

Because the balancing analysis in this case favors non-disclosure under Exception 6, as demonstrated above, the analysis under Exemption 7(C) also favors non-disclosure. Release of the videos would "reasonably be expected to constitute an unwarranted invasion of personal privacy" of the investigators and the detainees. The D.C. Circuit has stated that "the 7(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators." *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981). While the privacy interests of third parties mentioned in law enforcement files are "substantial," "[t]he public interest in disclosure [of their identities] is not just less substantial, it is insubstantial." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991); *see also Barouch v. Dep't of Justice*, 87 F. Supp. 3d 10, 28 (D.D.C. 2015) (release of information could reasonably be expected to constitute unwarranted invasion of personal privacy with respect to audio tape recording of interview with third party related to crimes committed by third party). For example, in *Rodriguez v. Dep't of Army*, 31 F. Supp. 3d 218, 234 (D.D.C. 2014), the court ruled Exemption 7(C) applied to child victim's written statements because, even if they contained "more substantive information concerning any purported government misconduct, given that these statements detail the sexual abuse of a minor, the privacy interests are at their apex." *See also Gov't Accountability Project v. Nuclear Regul. Comm'n*, No. Civ. A. No. 86-1976 (TFH), 1993 WL 13033518, at *3 (D.D.C. July 2, 1993) (Exemption 7(C) appropriate for redaction of "identifying information" where "allegations concern such provocative subjects as sexual harassment and drug abuse" because "[p]articularly where the

allegations are highly inflammatory, the privacy interests of the parties involved outweigh the public right of access, and conservative disclosure is warranted.").

There is no reasonable dispute that the videos of the interviews were "compiled for law enforcement purposes." And it is clear that the participants, especially the detainees, have substantial privacy interests in their identities and not having their identities disclosed in relation to a law enforcement investigation into sexual abuse allegations. Further, there is no public interest that outweighs those privacy interests and therefore CBP properly involved Exemption 7(C) in withholding the Videos.

## III.     CBP Reasonably Foresees Harm to Privacy From Disclosure

Under the FOIA Improvement Act of 2016, CBP may not withhold exempt materials unless CBP also "reasonably foresees that disclosure would harm an interest protected by" the FOIA exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I). "[T]he foreseeable harm requirement impose[s] an independent and meaningful burden on agencies." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (citations and quotations omitted).  The agency must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id.* (quoting H.R. REP. NO. 391, at 9).

Although the standards differ somewhat, Exemptions 6 and 7(C) both protect against an "unwarranted invasion of personal privacy," and CBP "reasonably foresees that disclosure" of the videos "would harm" the personal privacy interests protected by these exemptions.  5 U.S.C. § 552(a)(8)(A)(i)(I); Howard Decl. ¶ 33.  For the detainees, especially the minor detainee, "release of the videos would link them to allegations of sexual abuse and assault" that could not or would not corroborate.  *Id.* ¶¶ 20, 25, 29, 33.  And there is nothing to indicate that the detainees or the attorney from the National Immigrant Justice Center waived their privacy interests.  *Id.* ¶ 29, 31. Further, for the Special Agents and Certified Forensic Interviewer, CBP foresees disclosure would

not only invade their privacy, but also potentially subject them to the risk of harassment or public hostility for the work they performed, either in the cases at issue in these videos or generally on behalf of CBP. *Id.* ¶¶ 30-31 (providing examples of recent harassment and threats directed at CBP personnel), 33. Thus, CBP has articulated specific harms it reasonably foresees would result from disclosure. *See Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, Civ. A. No. 18-0155 (TNM), 2021 WL 4843970, at *19 (D.D.C. Oct. 18, 2021) (concluding CBP's assertion that disclosure of names would cause invasions of privacy for many CBP employees "would likely be enough to meet the agency's burden" under the foreseeable harm requirement); *Ball v. United States Marshals Serv.*, Civ. A. No. 19-1230 (JEB), 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) (finding agencies satisfied foreseeable harm from release of personally identifying information).

## IV.    The Videos Are Not Reasonably Segregable

The FOIA requires that "any reasonably segregable portion of a record" that is not exempt be released after redaction of the exempt information. 5 U.S.C. § 552(b). However, non-exempt portions need not be disclosed if "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, CBP evaluated whether non-exempt material was reasonably segregable from exempt material in the videos. Howard Decl. ¶¶ 34-35. Ultimately, CBP concluded that any non-

exempt material in the videos is "inextricably intertwined" with exempt material. *Id*. ¶ 35. The videos record interviews of detainees, thereby recording three forms of identifying information: their images, their voices, and the certain information conveyed in the interviews. *See id*. CBP reasonably concluded little of substance would remain once voices were removed and images blurred, and thus there is no "reasonably segregable" information to release. *Id*.; *See Davis v. U.S. Postal Inspection Serv*., 75 F. Supp. 3d 425, 432-33 (D.D.C. 2014) ("no meaningful portions . . . could be released . . . without identifying a third party individual or child victim"). *Mingo v. Dep't of Justice*, 793 F. Supp. 2d 447, 455 (D.D.C. 2011) ("[T]he Court finds that BOP properly withheld the video disks containing the images of more than 50 individuals in their entirety under FOIA exemption 7(C)").

## CONCLUSION

For the foregoing reasons, Defendant CBP respectfully requests that the Court grant summary judgment in its favor.

Dated: March 2, 2022                    Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division


By: */s/ Sean M. Tepe*
SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2533
Fax: (202) 252-2599
Email: sean.tepe@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSHUA PHILLIPS,                        )
                                        )
              Plaintiff,                )
                                        )
       vs.                              )        Civil Action No. 19-0928 (CJN)
                                        )
U.S. DEPARTMENT OF HOMELAND             )
SECURITY, *et al.*,                     )
                                        )
              Defendants.               )
_____ )

## DEFENDANT CUSTOMS AND BORDER PROTECTION'S
## STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to Local Civil Rule 7(h), Defendant Customs and Border Protection ("CBP"), by and through undersigned counsel, submits this Statement of Material Facts Not in Genuine Dispute in support of its Motion for Summary Judgment.

1.      On July 12, 2018, CBP received two FOIA requests from Plaintiff seeking records on several topics, including records related to allegations of sexual assault in CBP holding facilities.  Declaration of Patrick Howard ("Howard Decl.") ¶ 6, Exhibit 1, 2.

2.      On August 16, 2018, CBP acknowledged receipt of Plaintiff's requests and assigned them tracking numbers CBP-2018-076171 and CBP-2018-076172.  *Id.*, Exhibit 3.

3.      On April 3, 2019, Plaintiff filed this lawsuit seeking to compel CBP to produce records in response to the FOIA requests.  *See* Complaint (ECF No. 1).

4.      In response to these requests, CBP produced 654 pages of records and three videos with redactions made pursuant to 5 U.S.C. § 552(b)(2), (3), (6), (7)(C), and/or (7)(E).  Howard Decl. ¶¶ 9-11.

5.      CBP withheld an audio/video recording of a May 16, 2018 interview of an non-citizen detainee conducted by Office of Professional Responsibility Special Agents investigating

that detainee's allegation that he was sexually abused and drugged while in CBP custody. *Id*. ¶¶ 17-18, Exhibit 4.

6.      The interview was conducted pursuant to an investigation that could have resulted in a referral for criminal prosecution. *Id*. ¶ 27, Exhibit 4.

7.      CBP released to Plaintiff a redacted copy of the Report of Investigation concerning this allegation, and the Report contains a summary of the May 16, 2018 interview. *Id*. ¶¶ 18, 20, Exhibit 4.

8.      CBP withheld the May 16, 2018 video interview in full pursuant to 5 U.S.C. § 552(b)(6) and (7)(C). *Id*. ¶ 21.

9.      CBP withheld an audio/video recording of a February 6, 2019 interview of a minor, non-citizen detainee conducted by a Department of Homeland Security Investigations Certified Forensic Interviewer investigating that detainee's allegation that he was sexually assaulted by another minor detainee while in CBP custody. *Id*. ¶¶ 22-23, Exhibit 5.

10.     The interview was conducted pursuant to an investigation that could have resulted in a referral for criminal prosecution. *Id*. ¶ 27, Exhibit 5.

11.     CBP released to Plaintiff a redacted copy of the Report of Investigation concerning this allegation, and the Report contains a summary of the February 6, 2019 interview. *Id*.¶¶ 23, 25, Exhibit 5.

12.     CBP withheld the February 6, 2019 video interview in full pursuant to 5 U.S.C. § 552(b)(6) and (7)(C). *Id*. ¶ 26.

13.     The participants in the May 16, 2018 and February 6, 2019 recorded interviews possess privacy interests in their identity that have not been waived. *Id*. ¶ 29, 31

14.    CBP has averred that it reasonably foresees that disclosure of the May 16, 2018 Video and the February 6, 2019 Video will harm the privacy interests of the interview participants recorded in those videos.  *Id*. ¶¶ 29-33.

15.    CBP has averred that any information which is not exempt from disclosure under FOIA is inextricably intertwined with information that is exempt from disclosure because noting . *Id*. ¶¶ 34-35.


Dated: March 2, 2022                         Respectfully submitted,

                                             MATTHEW M. GRAVES, D.C. Bar. #481052
                                             United States Attorney

                                             BRIAN P. HUDAK
                                             Acting Chief, Civil Division


                                             By: */s/ Sean M. Tepe*
                                             SEAN M. TEPE, DC Bar #1001323
                                             Assistant United States Attorney
                                             555 Fourth St., N.W.
                                             Washington, D.C. 20530
                                             Phone: (202) 252-2533
                                             Fax: (202) 252-2599
                                             Email: sean.tepe@usdoj.gov